[Civ. No. 4088. Second Appellate District, Division One.—February 14, 1923.]

NINA BELL MILLER et al., Appellants, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

[1] APPEAL—ORDER DENYING NEW TRIAL—REVIEW.—While an order denying a motion for a new trial is no longer appealable, a point raised on the motion may be considered on appeal from the judgment.

[2] NEGLIGENCE — DEATH FROM COLLISION WITH ELECTRIC TRAIN— DISTANCE BETWEEN RAIL AND CURB—DISCOVERY OF ERROR AFTER TRIAL—EFFECT OF.—In an action for death resulting from a collision between an automobile in which the deceased was riding as a guest and an electric train, the fact that on a motion for a new trial it was made to appear that the actual distance between the nearest rail and the curb was a little more than five and one-half feet less than the distance which was stipulated on the trial to be correct was not sufficient to show that if the error had not occurred a verdict might have been rendered for the plaintiffs.

[3] ID.—EVIDENCE—SOUNDING DEVICES.—The exclusion of evidence in such action as to which was louder, a bell or a whistle, and whether it was just as easy to sound the whistle as to sound the bell, was not prejudicial error.

[4] ID. — CONTRIBUTORY NEGLIGENCE — PROXIMATE CAUSE — INSTRUCTIONS.—Instructions in such action as to contributory negligence which omitted the qualification that such negligence must have proximately contributed to the accident were not injurious where other instructions fully covered the subject of proximate cause.

61 Cal. App.—1  (1)

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edwin S. Earhart and Robt. J. Adcock for Appellants.

Frank Karr, R. C. Gortner and W. R. Millar for Respondent.

HOUSER, J.—In this action plaintiffs charge that on July 29, 1921, William Lee Miller was killed by a Pacific Electric train at the intersection of Eighth Street and American Avenue in the city of Long Beach while he was riding in an automobile as a guest of his father-in-law. At the commencement of the trial a map of the locality where the accident occurred was offered and received in evidence as Defendant's Exhibit 1, and all parties to the action stipulated that the map was a correct representation of the intersection of Eighth Street and American Avenue and immediate vicinity and that the measurements thereon were correct. The map shows that American Avenue from east to west curb lines is approximately ninety-six feet and that the double-track railroad of the defendant occupies approximately twenty feet in the center of the avenue, leaving two roadways, one on either side of the tracks, approximately thirty-eight feet wide from curb to rail. The evidence showed that a five-car train of the defendant was proceeding southerly along American Avenue and that the automobile in which deceased was riding was proceeding westerly on Eighth Street, which is fifty feet wide from curb to curb. The last stop made by the train prior to the accident was at Tenth Street and under the skip-stop arrangement in force at that time the next regular stop of the train was at Seventh Street.

The jury returned a verdict in favor of defendant, and from a judgment in its favor the plaintiffs appeal. On the motion for a new trial it was shown by affidavits and admitted by counsel for defendant in open court that the true distance from the curb line to the first track was only 32.39 feet, a discrepancy of not quite six feet.

During the closing argument of the case the learned trial judge interrupted counsel and, after some discussion, the court gave to the jury an instruction which closes as follows: "So that so far as Mr. Bell [the driver] himself is concerned, without reference to the deceased, he was guilty of such negligence that if he was suing he could not recover." Whereupon Mr. Earhart, one of the attorneys for plaintiffs, said: "That is exactly in the line of my remarks, that absolutely irrespective of the degree of negligence, gross or slight, of Mr. Bell, it does not affect the deceased. He was an invited party." Later the court instructed the jury as follows: "But under the circumstances of this case, I instruct you that the driver of the machine was guilty of negligence which proximately contributed to the injury."

[1] Following a verdict in favor of defendant, plaintiffs made a motion for new trial, which motion was by the court denied. Within her notice of appeal appellant has included the denial of her motion for a new trial, but, following the provisions of section 963 of the Code of Civil Procedure and a long line of decisions thereunder, the appeal from the order denying the motion for new trial must be dismissed, as such an order is no longer appealable. The point, however, raised on the motion for new trial is not lost to appellant, as it may be considered on the appeal from the judgment. [2] The point relied upon arose out of the discovery, after the trial, of the fact that, instead of the distance from the east curb of American Avenue to the most easterly rail of the car tracks being thirty-eight feet, as shown on the map which was stipulated on the trial to be correct, the actual distance was 32.39 feet, or a difference of a little more than five and one-half feet. It is contended that this difference became vital and important in view of an instruction given by the court, which closes as follows: "And if you further find that such negligence of deceased [going on the track without using ordinary care] contributed in any manner or in the slightest degree to the happening of the accident, plaintiffs cannot recover." Appellant argues that every inch of space traversed and every second of time used in doing so would be added to the time and opportunity which the deceased would have had of observing the approaching train. Assuming that the automobile was being driven at from eight to ten miles an

hour, as testified by the driver thereof, at the rate of even eight miles per hour it would require less than one-half second for it to traverse the distance of five and one-half feet; and it is contended that in that space of time the deceased might have said or done something which would have caused the jury to have rendered its verdict in favor of plaintiffs. But it must be remembered that before plaintiffs would be entitled to a verdict in their favor the jury must not only have found no contributory negligence on the part of deceased, but that the jury must also have found the defendant guilty of negligence. The jury very well may have concluded on the evidence that the defendant was free from negligence; hence it would be immaterial whether deceased was or was not guilty of negligence. In a matter of this nature it is necessary that the aggrieved party show, among other things, that the situation in which he finds himself arose through no fault or negligence of his own which with ordinary prudence he could have guarded against; furthermore, that had the error not occurred the verdict would, more probably, have been in his favor. The record is absolutely silent as to either of these conditions, save that in appellant's brief counsel expresses the belief, in effect, that had the deceased actually had the additional less than one-half second of time, which a calculation shows he might have had in the event the distance between the curb line and the first car track had been thirty-eight feet instead of thirty-two feet, the verdict, in all likelihood, would have been in favor of plaintiffs. Nowhere does it appear that counsel for plaintiffs ever made any effort to ascertain the exact distance either before the date of the trial or during the time the case was in progress. For all that appears, the testimony showing the actual distance was just as available before the date of the trial as it has ever been since that time. The showing, lacking at least in the foregoing particulars, was insufficient.

[3] Plaintiffs assign error because of the fact that on the trial of the case plaintiffs attempted to show that the electric train was equipped with a gong and an air-whistle and that the sounding of the air-whistle was a more effective method of attracting the attention of persons in peril who were about to cross the tracks, and that the court prevented

them from so doing. The following excerpt from the reporter's transcript will show what took place at that time:

"Q. From your experience, Mr. Hotzell, as a motorman, which is the louder, a bell or a whistle?

"The Court: Doesn't the law allow either?

"Mr. Earhart: Yes, sir.

"The Court: Then I don't think it makes any difference.

"Mr. Earhart: The point I am making is later on to develop that he had means at his command to have protected this dead man and didn't use it. . . .

"Mr. Earhart: Q. Mr. Hotzell, it is just as easy to sound the whistle as it would be to sound the bell?

"Mr. Millar: That is objected to as immaterial.

"The Court: Objection sustained."

It appears in evidence that the car was equipped with both a gong and a whistle, but that if not by ordinance of the city of Long Beach, at least by rule of the defendant company, motormen were forbidden to use the whistle at the place where the accident occurred. Beginning at a point two blocks from the scene of the accident and continuing thereto, defendant's motorman rang the gong practically all the time that the street-car was running that distance. That fact concerns plaintiffs to the extent of it being established, first, whether deceased was in the exer-. cise of ordinary care in not hearing the ringing of the gong; and, secondly, whether the defendant was using ordinary care in ringing the gong instead of blowing the whistle. Ordinary human observation would indicate that if the deceased could not, at the distance the evidence showed he was from the electric train, hear the gong, he could not hear, or would not have heard, a whistle. Neither the question of whether a whistle would make more noise than a bell, nor the question of whether it was "just as easy to sound the whistle as it would be to sound the bell," was the ultimate fact for the jury to determine. The jury was only called upon to decide whether in the circumstances the defendant used ordinary care. The evidence showed that the defendant might have used either the bell or the whistle, or possibly both the gong and the whistle, and the entire matter was one for the jury to determine under instructions given to the jury which amply covered the defendant's duty in the premises. The failure of the

court to admit the evidence was not such an error as prejudicially affected the plaintiffs' substantial rights or caused a miscarriage of justice.

[4] Appellant also complains of two instructions given by the court to the jury. In the first one, after defining the duty of deceased to use ordinary care on going on defendant's tracks, and after stating that with the use of ordinary care the deceased should have known of the approach of the train, the instruction concludes: "And if you further find that such negligence [of deceased] contributed in any manner or in the slightest degree to the happening of the accident, plaintiffs cannot recover." The second instruction was as follows: "The speed limit under the ordinance of Long Beach was twenty miles per hour, and a violation of the speed ordinance would be negligence of itself, and if that speed law was violated and that was a contributing cause of the accident, and if the deceased was not guilty of any negligence, then the plaintiff would be entitled to recover."

It is pointed out that in each of these instructions there is an omission of the qualification that in order that any negligence on the part of deceased should preclude recovery by plaintiffs, such negligence must have *proximately* contributed to the happening of the accident; in other words, the instruction covers *any sort of negligence* on the part of deceased, whether or not it contributed directly to the event. It is, of course, a well-known rule that the several instructions, while possibly given separately, cannot be so considered, but that they must be considered as a whole; and if in this case the point made by plaintiffs was covered by other instructions given by the court, then because the alleged erroneous instructions did not contain the proper qualification with reference to "proximate cause" plaintiffs were not injured by such failure. Looking, then, to the entire body of instructions herein, it will be found that in no less than ten different places is the jury, in substance, informed that unless negligence on the part of the deceased was the proximate cause of the injury it was of no consequence. Quoting from the instructions, we find such expressions as the following:

"The defendant has alleged contributory negligence on the part of the plaintiff. The burden is upon the defend-

ant to prove such contributory negligence by a preponderance of the testimony, and also whether that negligence proximately contributed to the injury.''

''On the other hand, the burden is on the defendant to prove contributory negligence of the plaintiff and that that negligence, if any, proximately contributed to the injury. Now, if they have not met that burden, or if the evidence is equally balanced on that point, then you could not find that the deceased was guilty of contributory negligence.''

It is, therefore, conclusively evident that any omission from the specified instructions of the qualification relating to ''proximate cause'' was not only fully covered but was emphasized in other instructions given by the court.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.